UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEAN KEOHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BOSTON GLOBE MEDIA PARTNERS, LLC ) CIVIL ACTION NO. _____
| SEVERANCE PAY PLAN, | ) |
| RICH FORD as PLAN ADMINISTRATOR, | ) |
| BOSTON GLOBE MEDIA PARTNERS, LLC | ) |
| and | ) |
| JOHN W. HENRY, | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

Plaintiff, Sean Keohan ("Keohan"), brings this action against Defendant Boston Globe Media Partners, LLC Severance Pay Plan (the "Plan"), and Defendant Rich Ford, as the Plan Administrator for the Plan ("Ford" or the "Plan Administrator"), Defendant Boston Globe Media Partners, LLC (the "Globe"), the company that owns and publishes the Boston Globe (the "Newspaper"), and Defendant John W. Henry, owner of the Globe and Publisher of the Newspaper ("Henry", and collectively with the Plan, Ford, and Globe, the "Defendants"), for the failure to provide a full and fair review of Keohan's claim for benefits under the Plan, the unlawful denial of the same, and for unlawful interference with the right to benefits which Keohan was, or would have become, entitled in violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

1

## PARTIES, JURISDICTION, AND VENUE

1. Keohan is an individual residing in Shrewsbury, Massachusetts. As set forth in greater detail below, Keohan was a Participant of the Plan, *i.e.*, an Employee that experienced a Termination of Employment as those terms are defined in the Plan. Keohan has standing to bring this suit under 29 U.S.C. § 1132(a).

2. The Plan is an "employee welfare benefits plan" as defined by ERISA, *i.e.*, it is a plan established and maintained by an employer (the Globe) to provide participants with severance benefits in the event of unemployment. The Plan defines itself as "Employer Administered," and identifies it's "Sponsor" as the Globe.

3. Ford is an individual residing in Arlington, Massachusetts and is the Director of Employee Relations of the Globe. The Globe identified Ford as the Plan Administrator that administered the Plan and made the decision to deny Keohan's claim for benefits under the Plan.

4. The Globe is a Delaware Company that transacts business in the Commonwealth of Massachusetts, with a principal place of business in Boston, Massachusetts. The Globe is responsible for paying Plan benefits out of its profits.

5. Henry is an individual residing in Brookline, Massachusetts and the owner of the Globe and Publisher of the Newspaper. Upon information and belief, Henry – by and through his subordinate business executives at the Globe – made the decision regarding Keohan's claim for Plan benefits.

6. The issues raised in this action arise under ERISA, 29 U.S.C. § 1001 *et seq.* This Court has jurisdiction pursuant to 29 U.S.C. § 1331, *i.e.*, federal question jurisdiction, and 29 U.S.C. § 1132(e)(1) and (f). Keohan has exhausted administrative remedies.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, and 29 U.S.C. § 1132(e)(2) because this District is where, *inter alia*, the Plan is administered, the breach took place, a substantial part of the events or omissions giving rise to this claim occurred, and Defendant Henry resides.

## FACTUAL ALLEGATIONS

8. Keohan began his employment with the Newspaper on or about June 16, 1985. At all relevant times Keohan was a full-time employee of the Newspaper, *i.e.*, he worked over thirty (30) hours per week, and was eligible for severance benefits under the New York Times Severance Pay Plan.

9. Boston Globe Media Partners, LLC (the "Globe"), of which Henry is the owner, purchased the Newspaper in or about August 2013.

10. Keohan remained a full-time employee of the Newspaper following the acquisition by the Globe, and served as the Globe's Chief Operating Officer from 2014 through the termination of his employment on September 12, 2017. At the time of his termination, Keohan's annual salary was $245,000.

11. Effective on or about October 20, 2013, the Globe established the Plan, which was designed to "provide severance benefits to those employees who were eligible to participate in the New York Times Company Severance Pay Plan immediately prior to the effective date of this Plan and who suffer a loss of employment under the terms and conditions set forth in the Plan."

12. Keohan was a Plan Participant, *i.e.* an Employee that suffered a Termination of Employment, and is entitled to receive, *inter alia*: 52 weeks of base salary; 12 months of group health plan premium contributions; and outplacement services.

13. Under the Plan, an Employee experiences a "Termination from Employment" where the Globe terminates the employment relationship as a result of: (1) job elimination, (2) job discontinuation, (3) office closing, (4) reduction in force, (5) organizational restructuring, or (6) such other circumstances as the Plan Administrator deems appropriate for the payment of severance.

14. On September 12, 2017, Keohan's employment was terminated. That day the Globe's President and Chief Financial Officer, Vinay Mehra, informed Keohan that his Globe e-mail was being shut-down immediately, and he was instructed to promptly leave the premises. Keohan inquired about his severance benefits and Mr. Mehra advised him that more information about his severance benefits would be forthcoming.

15. Keohan did not work for or otherwise provide any services to the Globe after September 12, 2017.

16. Keohan's termination was immediately announced internally (i.e., on September 12, 2017), and the Boston Business Journal published a story that same night regarding his immediate termination. The Newspaper also published a story regarding the termination of Keohan's employment on September 17, 2017.

17. Shortly after his employment was terminated by Mr. Mehra on September 12, 2017, Keohan was informed by David Carrillo – Chief Financial Officer of The Henry Organization, and an agent of the Globe – that Henry "simply does not want to pay severance," or words to that effect.

18. Thereafter, Henry and the Globe promptly took steps to interfere with and deprive Keohan of the severance benefits to which he is entitled under the Plan.

19. The next day, on September 13, 2017, the Globe terminated the Plan by corporate resolution signed by Henry. Keohan did not receive a copy of the corporate resolution until October 16, 2017.

20. On October 3, 2017, Keohan received a letter of the same date on Globe letterhead, signed by Mr. Carrillo, which informed Keohan that he would not be provided with severance benefits under the Plan, offering a series of false, self-serving and conflicting rationales.

21. For example, the Globe falsely claimed that the Plan terminated *three years earlier* on October 21, 2014. However, Globe employees had, in fact, been provided severance benefits under the Plan in the years following October 21, 2014, including without limitation, Chief Financial Officer James Levy, advertising executive Jason Kissell, Controller Karen Bray, and Editorial Page Editor Peter Canellos.

22. As another example, and consistent with Henry's insistence on not paying any more severance to Globe employees but *inconsistent* with the Globe's assertion that the Plan terminated in 2014, the October 3rd letter notified Keohan for the first time that the Globe Plan was terminated on September 13, 2017. Simultaneously, the Globe falsely claimed that Keohan's employment terminated on September 30, 2017 (approximately two weeks after the actual termination of his employment) because the Globe unilaterally and gratuitously decided to pay Keohan the equivalent of his regular salary through September 30, 2017.

23. Accordingly, the Globe alleged, Keohan was not entitled to Plan benefits because the Plan was terminated before the termination of his employment, *i.e.*, by gratuitously

paying Keohan for approximately two weeks the Globe had foiled his claim for Plan benefits.

24. Keohan timely satisfied all administrative requirements for eligibility under the Plan. Keohan repeatedly requested a copy of the requisite agreement and release under the Plan, but his requests were denied.

25. On November 29, 2017, Keohan timely filed a formal Claim for Severance Benefits pursuant to Article VII(1) of the Plan.

26. On February 28, 2018, Keohan received an undated Denial of his Claim for Severance Benefits under the Plan (the "Initial Denial") signed by Ford "On behalf the Plan Administrator." Upon information and belief, Ford was not the Plan Administrator in place at the time of the Initial Denial.

27. Instead, based on information and belief, Henry – by and through his subordinate business executives at the Globe – made the decision regarding Keohan's claim for Plan benefits and directed Ford to issue the Initial Denial.

28. In support of the Initial Denial, the unidentified Plan Administrator offered arbitrary, capricious, and shifting reasons for denying Keohan benefits. The Defendants abandoned the prior suggestion that the Plan terminated in 2014, but reiterated that by fictitiously and self-servingly extending his termination date, the Defendants had defeated Keohan's claim for benefits.

29. The Defendants also asserted two new justifications, each increasingly indicative of bad faith: (1) that Keohan was terminated for poor performance and therefore did not experience a Termination of Employment; and (2) that Keohan had not returned the

agreement and release contemplated in the Plan (which the Defendants had refused to provide him) and he was therefore ineligible.

30. In fact, Keohan's separation from the Globe satisfied the Plan's definition of Termination of Employment in a number of different ways. For example, Keohan's position was eliminated and / or discontinued: upon information and belief, Keohan is the last person to serve as Chief Operating Officer for the Globe. As another example, the termination of Keohan's employment was part of a broader organizational restructuring and reduction in force at the Globe: Keohan was one of eight Globe executives to leave employment with the Globe at or about that time; and, upon information and belief, the Globe reduced its executive operations staff from two to one.

31. On April 27, 2018, Keohan filed a timely appeal of the Initial Denial. Accompanying his appeal, Keohan submitted a sworn affidavit from former Plan Administrator Stephen Behenna exposing the basis of Defendants' Initial Denial as demonstrably false. Behenna identified four similarly situated executives – terminated on allegations of poor performance and / or for disagreements with superiors – that were deemed eligible for and provided Plan benefits between 2014 and 2017.

32. On June 25, 2018, the Defendants denied Keohan's appeal, repeating the same demonstrably false, inconsistent and bad faith justifications invoked in the Initial Denial.

33. Throughout his claim and appeal process, Keohan repeatedly endeavored to ascertain the identity of the Plan Administrator. Ford wrote the Initial Denial "On behalf of" the Plan Administrator. Six months after Keohan submitted his claim for benefits, on May 22, 2018, Ford acknowledged that he "currently serve[s] as Plan Administrator." Only after Keohan's claim and appeal had been already denied, in September 2018, Ford asserted

for the first time that he was the Plan Administrator to deny Keohan's claim. In fact, this too is demonstrably false: the Globe passed a corporate resolution signed by Henry on May 15, 2018 -- three months after the Initial Denial -- which sought to retroactively install Ford as Plan Administrator, effective July 23, 2017.

## COUNT I
## Denial of Benefits / Failure to Provide Full and Fair Review

34. Keohan restates and incorporates by reference herein the allegations contained in paragraphs 1-33.

35. The Plan is an employee welfare benefit plan governed by the provisions of ERISA, 29 U.S.C. § 1001 *et seq.* Ford is the individual identified as the Plan Administrator during the relevant time period.

36. Keohan is a Participant under the Plan; he was an Employee that suffered a Termination of Employment.

37. By virtue of the acts and practices described herein, including abusing their discretion, acting in an arbitrary and capricious fashion, failing to consistently apply Plan provisions to Keohan as they have with respect to similarly situated claimants, and failing to provide a full and fair review of Keohan's claim and its denial, the Defendants unlawfully denied Keohan benefits to which he is entitled.

38. As a direct and proximate result of Defendants' conduct, Keohan has suffered substantial damages, attorneys' fees and other costs, and is entitled to his benefits under the Plan and such other remedial or other relief against Defendants as this Court deems appropriate as provided by 29 U.S.C. § 1132(a)(1)(B).

# COUNT II
## Interference with Protected Rights

39. Keohan restates and incorporates by reference herein the allegations contained in paragraphs 1-38.

40. By virtue of the acts and practices described herein, including, *inter alia*, terminating the Plan the day after terminating Keohan's employment, and gratuitously paying Keohan approximately two weeks of salary to obfuscate the date his employment terminated, the Defendants discriminated against Keohan for the purposes of interfering with his attainment of a right to which he would otherwise have been entitled under the Plan in violation of 29 U.S.C. § 1140.

41. As a direct and proximate result of such conduct, Keohan has suffered substantial damages, attorneys' fees and other costs, and is entitled to his benefits under the Plan and such other remedial or other relief against Defendants as this Court deems appropriate as provided by 29 U.S.C. § 1132(a)(3).

**WHEREFORE**, Plaintiff Sean Keohan requests pursuant to 29 U.S.C. § 1132(a)(3), that:

(A) This Court enter judgment declaring that Keohan is entitled to benefits under the Plan;

(B) This Court enter judgment for Keohan against the Defendants, jointly and severally, on Count I of his Complaint and order the Defendants, jointly and severally, to provide Keohan with the benefits owed to him under the Plan including but not limited to the severance pay, 12 months of group health plan premium contributions, and outplacement services to which he is entitled under the Plan, together with interest;

(C) This Court enter judgment for Keohan against the Defendants, jointly and severally, on Count II of his Complaint and award Keohan his damages, including but not limited to the severance pay, 12 months of group health plan premium contributions, and outplacement services to which he is entitled under the Plan, together with interest and other remedial or other relief as this Court deems appropriate;

(D) This Court enter judgment for Keohan against the Defendants, jointly and severally for Keohan's reasonable attorneys' fees and costs of bringing this action; and

(E) Award such other relief as the court deems appropriate and just.

Date: February 14, 2019

Respectfully submitted,

SEAN KEOHAN

/s/ David I. Brody_____
Brian J. MacDonough (BBO #667553)
David I. Brody (BBO #676984)
Sherin and Lodgen LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 646-2000
bjmacdononough@sherin.com
dibrody@sherin.com